DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Bryan D. Harmon, appeals his conviction of the Summit County Court of Common Pleas which found him guilty of felonious assault and child endangering. We affirm.
 I. {¶ 2} On June 13, 2002, Appellant was indicted on one count of felonious assault, a felony of the second degree, in violation of R.C.2903.11(A)(1), one count of endangering children, a felony of the second degree, in violation of R.C. 2919.22(B)(1), and one count of endangering children, a felony of the third degree, in violation of R.C. 2919.22(A).
 {¶ 3} On November 7, 2002, a jury trial was held on the matter. On November 14, 2002, the jury returned a verdict of guilty for all three counts. On December 3, 2002, Appellant was sentenced to incarceration for a period of six years for the charge of felonious assault, in violation of R.C. 2903.11(A)(1), and one year, to be served concurrently, for charge of endangering children, in violation of R.C. 2919.22(A). Appellant was not sentenced for the charge of endangering children, in violation of 2919.22(B)(1), because the trial court found it to be merged with the felonious assault charge. This appeal followed.
 II. Assignment of Error
"Appellant's Conviction Of Felonious Assault And Child Endangering (Under R.C. 2919.22(B)(1), Was Contrary To The Manifest Weight Of The Evidence." (Sic.)
 {¶ 4} In Appellant's sole assignment of error, he contends that his felonious assault and endangering children [R.C. 2919.22(B)(1)] convictions were against the manifest weight of the evidence. We disagree.
 {¶ 5} In determining whether a criminal conviction is against the manifest weight of the evidence:
"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment]." Statev. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 6} The jury found Appellant guilty of felonious assault which provides that "No person shall knowingly do * * * the following: (1) Cause serious physical harm to another * * *." R.C. 2903.11(A)(1).
 {¶ 7} The jury also found Appellant guilty of endangering children pursuant to R.C. 2919.22(B)(1) and R.C. 2919.22(A). Because Appellant is only appealing his conviction to the violation of R.C. 2919.22(B)(1), that is the only endangering children charge that we will discuss. It provides that "[n]o person shall do any of the following to a child under the age of eighteen years of age * * * (2) Torture or cruelly abuse the child." R.C. 2919.22(B)(1).
 {¶ 8} Testimony revealed that Appellant had been living in his father's home with his girlfriend, Jody Roberts ("Jody"), and her two children, Monica Roberts, who was four years old, and Alicia Roberts ("Alicia"), who was six months old. On May 28, 2002, Appellant dropped off Jody at work while his brother, Jeff Harmon, watched Jodi's children for approximately 15 to 20 minutes. After Appellant returned home, his brother left at 8:00p.m., and Appellant was the only adult watching the children. In Appellant's written statement to investigators, he admitted that Alicia began crying. He attempted to give her a bottle and a pacifier, but Alicia refused both. Appellant admitted that he "picked her up and shook her for a minute or two" before putting her to bed at around 8:15p.m. The child did not stop crying after he shook her. Appellant stated that at 8:45 p.m., Alicia started crying again, so he went to give her a pacifier. When Appellant was halfway down the stairs, Alicia stopped crying. Appellant walked over to her and observed that "[h]er eyes were rolled back and her legs were tight and she was gasping for air." When Appellant picked Alicia up, she was limp. Appellant called Jody, who told him to bring Alicia to her work. When Appellant brought Alicia to Jody, Jody then told Appellant to take her to Akron Children's Hospital.
 {¶ 9} Doctors at the hospital testified that they gave Alicia medications to stop the seizure and they also intubated her to help her breathe. The doctors noticed a bruise on Alicia's right shoulder. Alicia was then given a CAT scan that revealed subdural hemorrhage and subarachnoid hemorrhage (bleeding in the brain) and some edema (swelling of the brain). A doctor who treated Alicia stated that she was 99 percent sure that Alicia's injuries were the result of "shaken baby — shaken impact syndrome", a nonaccidental trauma.
 {¶ 10} Appellant maintains that although he did shake Alicia, her injuries could not have occurred during the period of time that Appellant was caring for the child. Appellant largely bases this argument on the testimony of Dr. Michael Powell, a retired ER pediatrician. Dr. Powell testified that normally edema would not show up on a CT scan until 12 to 48 hours after the "acute insult." Dr. Powell testified that while it would not be impossible for the edema to show up on the CT scan after only a few hours, it would be highly unlikely. During cross-examination and re-direct, Dr. Powell stated that he was not contesting the fact that Alicia was a shaken baby, just that it would be unlikely for the edema to show up in only a few hours.
 {¶ 11} Appellant also asserts that Alicia did not show the "triad of injuries" that normally accompany shaken baby syndrome. On cross-examination, pediatric ER physician, Dr. Michelle Walsh, testified that shaken baby syndrome "usually produces a triad of injuries, including cerebral edema, subdural hemorrhage, and retinal hemorrhages." Dr. Walsh further testified that retinal hemorrhages are seen in 80 to 90 percent of shaken baby syndrome cases, but that various reports have the ranges anywhere between 30 and 100 percent. Because Alicia did not show any signs of retinal hemorrhages, Appellant contends that this supports his statement that he did not cause the injuries to Alicia.
 {¶ 12} However, Dr. Walsh and Dr. James Besunder, who both initially treated Alicia at Akron Children's Hospital, both testified that Alicia's injuries were consistent with those of shaken baby syndrome. Although Alicia did not exhibit retinal hemorrhages, she did have edema and a subdural hemorrhage. Specifically, Dr. Walsh testified that, after conferring with the intensivist and the radiologist treating Alicia, she came to the conclusion that she was "99 percent sure" Alicia had suffered from shaken baby syndrome.
 {¶ 13} After a thorough review of the record, we cannot conclude that the trial court lost its way as to create a miscarriage of justice, which would require a reversal and a new trial. Appellant's assignment of error is overruled.
 III. {¶ 14} Appellant's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
CARR, J. CONCUR